UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-------------------------------X

STEVE J. KHAN

       Plaintiff,                <u>MEMORANDUM AND ORDER</u>

   -against-                  Civil Action No.
                                      CV-03-2411(DGT)

HIP CENTRALIZED LABORATORY
SERVICES, INC.

       Defendant.

-------------------------------X

TRAGER, J:


    Plaintiff Steve J. Khan (or "Khan" or "plaintiff") brings
this action against HIP Centralized Laboratory Services, Inc.
("CLS" or "defendant"), pursuant to the Age Discrimination in
Employment Act, 29 U.S.C. § 623(a), et seq. ("ADEA") and Title
VII of the Civil Rights Act of 1964, as amended, 42 U.S.C.
§ 2000e et seq. ("Title VII").  Plaintiff alleges that he
suffered several adverse discriminatory actions based on his age,
including three departmental transfers, a suspension and a
hostile work environment.  Plaintiff also alleges that he was
subjected to a hostile work environment and disparate treatment
in retaliation for making an internal complaint and a complaint
to a state agency.

Defendant moves for summary judgment pursuant to Fed. R. Civ. P. 56(c).  In its brief, defendant addresses plaintiff's first and second causes of action: the disparate treatment discrimination claim under the ADEA and the retaliation claim under Title VII and the ADEA.  Defendant failed to brief, or in any way mention, plaintiff's harassment claims.  Accordingly, only the disparate treatment causes of action are considered on this motion for summary judgment.

### Background

### (1)

### Employment history

CLS, a not-for-profit medical testing laboratory (Def. 56.1 ¶ 1), hired plaintiff as a laboratory technician in November 1970 (Greenberg Aff. Ex. F) and he is still employed by CLS today. Except for a brief leave, plaintiff worked as a laboratory technician until 1997 when he demoted to a laboratory aide in the Accessioning Department.  (Greenberg Aff. Ex. R.)

Plaintiff alleges three separate transfers and a suspension as discriminatory action.  The adverse actions allegedly began in 1995 when he was transferred from the Chemistry Department, where he had worked for approximately nineteen years, to the Client Services Department.  Approximately eight months later, he was

suspended from work for allegedly failing to perform job duties. Approximately two weeks after this suspension, plaintiff filed a complaint of discrimination with the New York City Commission on Human Rights (or "NYCCHR").  Eight days after plaintiff filed this complaint, he was transferred from Client Services into the Microbiology Department.  Plaintiff spent approximately ten months in the Microbiology Department as a laboratory technician before being demoted to laboratory aide in the Accessioning Department where he remains today. (Greenberg Aff. Ex. R, Def's 56.1 ¶ 8.)

## (2)

### The First Transfer

Plaintiff was transferred from the Chemistry Department to the CLS Client Services Department on August 14, 1995, shortly after taking a five-day bereavement leave. (Greenberg Aff. Ex. N.)  Prior to this transfer, plaintiff had learned his brother had died and he requested the five-day leave from his supervisor, Susan Tan.  His union contract guaranteed this leave in the event of the death of an immediate family member.  (Khan Aff. ¶ 2; Greenberg Aff. Ex. O Art. XII ¶ A.)  Plaintiff alleges that after Ms. Tan spoke with Michael Paleos, the Chief Operating Officer, regarding plaintiff's bereavement time, she told

plaintiff "that Mr. Paleos had stated that he did not need older workers around, especially those with three or more weeks of annual leave." (Khan Aff. ¶ 3.) Khan took the leave and, upon returning, was transferred to the Client Services Department. (Khan Aff. ¶ 5.)

Plaintiff also asserts that, near the time of his transfer to client services, Cherrie Eng, the personnel manager, told him that Mr. Paleos did not want any person entitled to three weeks or more of vacation. (Khan Aff. ¶ 6.) Under the union contract any union member with between two and five years of service received three weeks paid vacation, and anyone with five years or more received four weeks. (Greenberg Aff. Ex. O Art. VII ¶ A.)

As further evidence for his claim, plaintiff alleges that around the time of this transfer, CLS was terminating or laying off other older technicians. (Khan Aff. ¶ 7.) In his complaint, plaintiff points to several employees, some older than him, who were either terminated or laid off around this time. (Second Am. Compl. ¶¶ 22-25). However, in his deposition, plaintiff clarified that the older technicians were not replaced by younger technicians, but by technologists, a term explained below. (Greenberg Aff. Ex. E.)

### Defendant's Reasons for the First Transfer

According to CLS, plaintiff's transfer into Client Services was due to a change in the regulations governing CLS's operations.  Both parties agree that from the 1970s until June 30, 1994, plaintiff was certified as a laboratory technician by the New York City Department of Health (or "NYCDOH").  (Greenberg Aff. Ex. H.)  On July 1, 1994, the Clinical Evaluation Program (or "CLEP") of the New York State Department of Health replaced the NYCDOH as the regulatory authority for clinical laboratories, such as CLS.  (Glasberg Aff. ¶ 5.)

Under the old NYCDOH regulations, CLS laboratory technicians were permitted to perform laboratory testing independently. (Glasberg Aff. ¶5.)  The new NYSDOH regulations no longer included the laboratory technician position as a classification. The new NYSDOH requirements mandated that only laboratory technologists could perform testing that required the exercise of independent judgment.  (10 NYCRR § 58-1.5(a), at Glasberg Aff., Ex. A.)  The position of laboratory technologist required more education than the previous technician position and plaintiff did not posses the requisite educational background.  As a result, plaintiff was not qualified for the technologist position. Plaintiff has argued that he should have been "grandfathered"

5

into his old position, citing other, unrelated statutes which allowed the substitution for a number of years of experience for educational requirements.

CLS took nearly a year to implement these new regulations. First, on August 7, 1994, CLS released new Job Qualifications/Descriptions for "individuals working in the test related areas at CLS" but failed to include a new description for laboratory technician. (Greenberg Aff. Ex. I.) Then, on June 12, 1995, CLS corrected this oversight by releasing a memo on the job qualifications of laboratory technicians. It stated that the "medical laboratory technician performs laboratory tests under the observation of a medical technologist or the supervision of a laboratory supervisor or laboratory director in accordance with the new requirements of the NYSDOH regulations." (Greenberg Aff. Ex. M.) CLS states that because technicians required supervision by technologists, it decided to phase out the technician position and only hire technologists who were qualified under the regulations to exercise independent judgment.

Implementing this plan, CLS transferred plaintiff to Client Services on August 14, 1995. Although his hourly pay rate and benefits were not affected, he did loose a $2000 bonus per year for longevity as a technician. As shown on the transfer form recorded by CLS at the time, plaintiff's transfer was intended to

be temporary pending a determination of plaintiff's seniority date. (Greenberg Aff. Ex. N; Greenberg Aff. ¶ 18.)

Defendant states that this new policy of replacing technicians with technologists was enforced throughout the entire company. Plaintiff points to no evidence that any technicians were allowed to remain in their former position.

## (4)

### Plaintiff's Suspension and Complaint to NYCCHR

Several months after the transfer from the Chemistry Department into Client Services, plaintiff was suspended for allegedly failing to complete two job duties. On March 4, 1996, while working in the new position, plaintiff allegedly failed to call in a positive throat culture, which was a requirement of his job. (Greenberg Aff. Ex. Y.) Plaintiff disputes that this occurred, but admits that he failed to complete the second duty, calling in a "panic value."[1] Although in his affidavit plaintiff claims that he called in the panic value, in his deposition he admitted that on Saturday, March 23, 1996, he failed to pick up

---

[1] Neither party explains what a "panic value" actually is. One can infer that it refers to a test result requiring immediate action. In any case, both sides agree that it was an important job function.

panic logs and call them into centers which should have been notified of them. (Greenberg Aff. Ex. Y., Ex. E 225-26.)

Plaintiff also asserts that, sometime after he failed to call in the panic value, but before he was suspended for his actions, he had a conversation with Mr. Paleos. (Khan Aff. ¶ 20.) Plaintiff told Mr. Paleos that he knew Mr. Paleos was getting rid of older workers and that plaintiff was going to take action. (Khan Aff. ¶ 20.)

During a meeting on or around April 8, 1996, Janet Gherradi, the Client Services supervisor, informed plaintiff that he was suspended for five days.[2] (Greenberg Aff. Ex. Y.) Ms. Gherradi, summarized this meeting in a memo, dated April 10, 1996, from Janet Gherradi to Cherrie Eng. (Ofodile Aff. Ex. 5.) According to this memo, Khan was overheard commenting that "it was the consensus that CLS is trying to eliminate the employees with long tenure" and that Khan believed the suspension was in retaliation for Khan saying he was going to grieve the complaints against him. (Ofodile Aff. Ex. 5.)

Plaintiff filed his first complaint with the NYCCHR on April 24, 1996, alleging violations of Title VII of the Civil Rights

---

[2] Plaintiff filed a grievance with his union over the suspension, and the suspension was changed from five days to two and one half days on January 15, 1998. (Greenberg Aff. Ex. Z.)

Act of 1964 on the basis of color, race, gender, national origin and retaliation for complaining of discrimination. (Greenberg Aff. Ex. B.) Plaintiff amended his NYCCHR complaint to include allegations of age discrimination in November 1997, approximately one and a half years later. (Greenberg Aff. Ex. D.) It is unclear when CLS received its notice of the complaint. (Ofodile Aff. Ex. 7.)

**(5)**

**The Second Transfer**

On April 30, 1996, six days after plaintiff filed his complaint with NYCCHR, plaintiff was notified that he would be transferred from Client Services to Microbiology, and on May 2, 1996, he was actually transferred. CLS maintains that the position in Client Services was always intended to be temporary pending the determination of plaintiff's seniority date. (Greenberg Aff. Ex. N; Greenberg Aff. ¶ 18.) According to CLS, plaintiff was transferred into Microbiology when this seniority date determination was made. Plaintiff did not challenge the seniority date ultimately assigned to him, but does challenge that the end of determination process was the reason for his transfer. As noted above, the transfer occurred days after CLS received plaintiff's complaint of discrimination.

When plaintiff was transferred into the Microbiology department, he replaced Luis Martinez, a part-time employee who had less seniority than plaintiff. (Greenberg Aff. ¶ 19.) Despite the fact that the union contract provided that plaintiff replace the person with the least seniority, there were two other employees in the Microbiology department who had less seniority than Mr. Martinez: Mei Li (a full-time employee) and I. Garrido (a part-time employee). (Greenberg Aff. Ex. P.) It should be noted that Ms. Li was older than plaintiff because plaintiff compares himself to her in attempting to show an inference of age discrimination. (Greenberg Reply Aff. Ex. D.)

Plaintiff retained the title, pay rate and benefits of a laboratory technician, but his schedule was significantly changed. (Greenberg Aff. ¶ 19.) Plaintiff was assigned Mr. Martinez's former schedule: 4:00 p.m. to 8:00 p.m. on Monday, Tuesday, Thursday and Friday and 1:00 p.m. to 5:00 p.m. on Saturday, rather than working Ms. Li's schedule which was similar to that of his former position. (Greenberg Aff. Ex. Q.) Plaintiff lost three hours of work a day by this transfer meaning that he also had a reduction in pay. In addition, he was required to work on Saturdays which he had not done before. Plaintiff also alleges that there were fewer promotional opportunities in the Microbiology Department.

### The Third Transfer

Plaintiff's supervisor for his new assignment in
Microbiology consistently gave him satisfactory evaluations.
(Butala Aff. Ex. A.)  However, it is also undisputed that in
early 1997 CLS purchased new machinery for the Microbiology
Department which made plaintiff's work unnecessary.  (Butala Aff.
¶ 5)  Plaintiff's union was informed in a letter dated February
27, 1997 that plaintiff would be transferred out of Microbiology
effective March 3, 1997.  (Greenberg Aff. Ex. R.)

Upon being laid off from his position in Microbiology,
plaintiff was moved to the Accessioning Department as a
laboratory aide, where he again replaced a less senior employee.
(Greenberg Aff. Ex. R.)  As a laboratory aide in this department
plaintiff's hourly wage dropped from approximately $23 per hour
to $13 per hour.  (Pl. Memo. 2.)

### Other Evidence of Discriminatory Intent

Plaintiff alleges that several other discriminatory
comments were made to him during his employment, but they are not
clearly tied to any of the above incidents.  Plaintiff states
that Mr. Paleos told him personally, in both 1995 and 1996, that
Paleos "was going to get rid of [plaintiff] because [Paleos] did

not want older workers around."  (Khan Aff. ¶8).  Plaintiff does
not provide the date or any context for these statements.  (Khan
Aff. ¶ 8.)

Additionally, plaintiff asserts that twice in 1996 while he
was working in Client Services, Janet Gherradi, supervisor in
Client Services, said: "Don't let that grey beard fool you.
You're not too old to start over."  Each time this happened,
plaintiff alleges that Ms. Gherradi made the comment to him
immediately after speaking to Mr. Paleos about plaintiff.  (Khan
Aff. ¶ 9.)

**(8)**

### Plaintiff's Current Situation at CLS

On November 19, 2001, plaintiff was briefly reassigned by
CLS as a laboratory technician because he had obtained an
Associate's Degree and had promised to get a Bachelor's Degree.
(Greenberg Aff. Ex. W).  However, plaintiff did not receive good
evaluations.  (Greenberg Aff. Ex. X.)  Plaintiff failed to pass
his probationary period and was transferred back to Accessioning
as a laboratory aide.  (Greenberg Aff. ¶ 25.)  To date,
plaintiff has not completed his Bachelor's Degree (Greenberg Aff.
Ex. E. 89-91), and he remains a laboratory aide in Accessioning
(Greenberg Aff. ¶ 4).

## Discussion

### (1)

### Age Discrimination Claims

Plaintiff claims that all three of his transfers and his suspension were adverse actions in violation of the ADEA.

An employment discrimination claim under the ADEA is analyzed under the three-step burden shifting framework established in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973).  See Schnabel v. Abramson, 232 F.3d 83, 87 (2d Cir. 2000).  Under this framework, a plaintiff must first establish a prima facie case of employment discrimination.  See St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 506 (1993).  By establishing a prima facie case, plaintiff creates a presumption that the employer engaged in unlawful discrimination.  Id.  The defendant must rebut this presumption by producing evidence that "the adverse employment actions were taken 'for a legitimate, nondiscriminatory reason.'"  Id. at 507 (quoting Texas Dept. of Cmty. Affairs v. Burdine, 450 U.S. 248, 254 (1981)).  If the defendant carries this burden of production, the presumption of discrimination "completely 'drops out of the picture.'"  James v. New York Racing Ass'n, 233 F.3d 149, 154 (2d Cir. 2000) (quoting St. Mary's Honor Ctr., 509 U.S. at 510-11).  Having proffered a nondiscriminatory reason, "the employer will be entitled to

summary judgment . . . unless the plaintiff can reasonably point to evidence that supports a finding of prohibited discrimination." <u>James</u>, 233 F.3d at 154 (citing <u>St. Mary's</u>, 509 U.S. at 510-11; <u>Burdine</u>, 450 U.S. at 255-56).

In order for a plaintiff to establish a prima facie case for discriminatory adverse action, a plaintiff must show that (1) he was a member of the protected class; (2) he was qualified for the job; (3) the employer subjected him to an adverse employment action and (4) the adverse employment action occurred under circumstances giving rise to an inference of discrimination. <u>See</u> <u>Woodman v. WWOR-TV, Inc.</u>, 411 F.3d 69, 76 (2d Cir. 2005). In establishing a prima facie case for these claims, plaintiff's burden is minimal. <u>See</u> <u>Carlton v. Mystic Transp.</u>, 202 F.3d 129, 134 (2d Cir. 2000) (citing <u>St. Mary's Honor Ctr. v. Hicks</u>, 509 U.S. 502, 506 (1993); <u>Scaria v. Rubin</u>, 117 F.3d 652, 654 (2d Cir. 1997) (per curiam); <u>Chambers v. TRM Copy Ctrs. Corp.</u>, 43 F.3d 29, 37 (2d Cir. 1994) (describing the burden of production as <u>de minimis</u>)).

The ADEA provides protection to individuals who are at least 40 years old. 29 U.S.C. § 631(a). Plaintiff was forty-nine years old at the time of his first transfer, so there is no question that he has satisfied the first prong of a prima facie case. The other three prongs of the prima facie case will be

addressed for each transfer and disciplinary action in turn.

### (2)

### First Transfer

For the first transfer to the Client Services department,
plaintiff meets the second prong of the prima facie case because
he remained qualified for his technician position.  He was a
technician for several years, with no evidence of poor
performance, "[demonstrating] that he '[possessed] the basic
skills necessary for performance of [the] job.'" de la Cruz v.
New York City Human Res. Admin. Dept. of Soc. Servs., 82 F.3d 16,
20 (2d Cir. 1996) (quoting Powell v. Syracuse Univ., 580 F.2d
1150, 1155 (2d Cir. 1978).

Plaintiff meets the third requirement of the prima facie
case because the transfer constituted an adverse action.  Under
the ADEA, "[a] plaintiff suffers an adverse employment action if
he . . . endures a materially adverse change in the terms and
conditions of employment." Galabya v. New York City Bd. of Ed.,
202 F.3d 636, 640 (2d Cir. 2000) (citing Richardson v. New York
State Dep't of Corr. Serv., 180 F.3d 426, 446 (2d Cir. 1999))
(internal quotations omitted).  Plaintiff has alleged that there
were fewer promotional opportunities in Client Services.
Rodriquez v. Bd. of Educ. of Eastchester Union Free Sch. Dist.,

620 F.2d 362 (2d Cir. 1980) (holding that a teacher's transfer to a position with fewer promotional opportunities was an adverse action). Furthermore, plaintiff lost a $2,000 a year bonus for his longevity in the technician position. See Galabya, 202 F.3d at 640 (stating that a decrease in salary would be considered an adverse action). Therefore, plaintiff satisfies the second step of the prima facie case.

To meet the fourth and last step of the prima facie case, discriminatory intent, plaintiff relies on the alleged comments by Mr. Paleos. As the requirements for establishing a prima facie case are de minimus, these comments are sufficient to satisfy the standard. However, CLS is still entitled to summary judgment if it can offer a legitimate, nondiscriminatory reason for the transfer which the plaintiff cannot rebut as pretext.

CLS's decision to end the technician position was a legitimate business decision. See Jetter v. Knothe Corp., 324 F.3d 73, 76 (2d Cir. 2003) (finding that internal reorganization is a legitimate nondiscriminatory reason); Nicholls v. Brookdale Univ. Hosp. & Med. Ctr., 2005 WL 1521239 (E.D.N.Y. June 22, 2005) (finding that increased educational requirements which changed the racial make up of the total staff did not violate Title VII). It is undisputed that under the new state regulations plaintiff was no longer able to perform his job as a technician without the

16

direct oversight of a technologist.  CLS made a determination to
retain only technologists because they could perform the tests
themselves in order to avoid increasing the number of personnel
on the same project.  Plaintiff has argued that he should have
been "grandfathered" into the technologist position.  However,
plaintiff points to no evidence that any younger employees, or in
fact, any other employees at all were "grandfathered" into the
technologist position.  Absent evidence of discriminatory
application of this policy, the company's company-wide decision
not to challenge the regulation by creating a grandfather clause,
which, in addition, was not specifically authorized by the new
state law, was clearly a legitimate, nondiscriminatory reason for
plaintiff's transfer.

As defendant has offered a nondiscriminatory reason for the
transfer, plaintiff must point to evidence that the reason was a
pretext for age discrimination in order to survive summary
judgement.  See Schnabel v. Abramson, 232 F.3d 83, 89 (2d Cir.
2000) (requiring plaintiff to show defendant's offered reason as
pretextual).  In addition to showing the defendant's offered
reason to be false, the entire record must be examined "to
determine whether the plaintiff could satisfy his 'ultimate
burden of persuading the trier of fact that the defendant
intentionally discriminated against the plaintiff.'"  Id. at 89

(quoting Reeves v. Sanderson Plumbing Prod., 530 U.S. 133, 143 (2000)). Plaintiff's argument of pretext and alleged evidence of discrimination are not sufficient under this standard.

Plaintiff has not pointed to any evidence that the application of the new regulation was a pretext for age discrimination. Assuming that defendant was looking to be rid of plaintiff because of his age, plaintiff has not argued that these regulations were applied in a discriminatory manner. Thus he never alleged that technicians under forty were being retained while only those over forty were terminated. Plaintiff had ample time for discovery, and can point to no evidence that workers of different ages were treated differently under the new policy. Plaintiff's allegation that other technicians were also laid off and replaced by technologists supports the argument that defendant made a company-wide decision to remove the position in order to comply with the new state health regulations.

Thus, the alleged comments by Mr. Paleos – even if not stray – are not sufficient to overcome defendant's nondiscriminatory reason for the action. Woroski v. Nashua Corp., 31 F.3d 105, 110 (2d Cir. 1994), abrogated on other grounds by Schnabel, 232 F.3d 83 (holding that absent other evidence, "some evidence of age bias" based in a supervisor's statements was "not sufficient to withstand a properly supported

motion for summary judgment"); <u>Lee v. New York State Dept. of Health</u>, no. 99-4859, 2001 WL 34031217 (S.D.N.Y. Apr. 23, 2001) (finding that a "stray remark" alone was not sufficient to defeat summary judgment). Plaintiff points to two comments by Mr. Paleos around or before the time of the first transfer: that Mr. Paleos did not need "older workers around, especially those entitled to three or more weeks of annual leave" and again that he did not want workers with three or more weeks of vacation.

A large component of the comments by Mr. Paleos are focused on seniority rather than on age. Under the union contract, workers could accrue three weeks vacation within five years, meaning that an employee who was under forty could have this amount of vacation time, or an employee who was over forty could not yet have this amount of vacation. To the extent that his comments were about seniority, rather than age, animus toward seniority does not create an inference of discrimination. <u>See Ludovicy v. Dunkirk Radiator Corp.</u>, 922 F.2d 109, 111 (2d. Cir. 1990) (discussing the problems inherent in using seniority to establish an inference of age discrimination).

In any case, because of the requirements of the new state law, these remarks, and the other similar undated remarks are not sufficient to defeat the summary judgment motion. <u>See Slattery v. Swiss Reinsurance America Corp.</u>, 248 F.3d 87, 94 (2d Cir.

2001) (granting summary judgment against plaintiff even where pretext was assumed, because plaintiff's reliance on only one statement about lowering the age of the workforce was not sufficient).

Although neither side raised the mixed-motive analysis, plaintiff does not meet his burden under this analysis either. "[T]o warrant a mixed-motive burden shift, the plaintiff must be able to produce a 'smoking gun' or at least a 'think cloud of smoke' to support his allegations of discriminatory treatment." Raskin v. Wyatt Co. 125 F.3d 55, 61 (2d Cir. 1997). The supervisor's comments, which mostly focused on seniority, rather than age, are not sufficient to show that age – rather than the new state law – was a motivating factor in the decision to transfer the plaintiff.

Summary judgment is, therefore, granted as to plaintiff's claims of age discrimination regarding the first transfer.

**(3)**

**Suspension**

Plaintiff alleges that his suspension in April of 1996 was also an adverse discriminatory action based on his age. Again, plaintiff meets the burden of a prima facie case because he was qualified for the job, and he was materially adversely affected by the loss of two and one half days pay. The evidence of age

discrimination is the same evidence plaintiff previously presented.  Plaintiff also offers two similar, but undated comments made to him by Ms. Gherradi in 1996; one of them made near the time of the failure to call in the panic valve and near the time of the suspension.  Her comment, as related by plaintiff, was: "Don't let that grey beard fool you.  You're not too old to start over."  Plaintiff alleges that this comments is ageist, but it lends itself to several interpretations including that Ms. Gherradi was trying to be supportive, or that age was discussed in one of her conversations with Mr. Paleos.  Plaintiff fails to provide any further context which could shed light on the matter.

In any event, assuming that these remarks are interpreted as ageist, while plaintiff has again made out a prima facie case for age discrimination, defendant has rebutted the prima facie case with a legitimate, nondiscriminatory reason for its action.  CLS suspended plaintiff for failure to perform his duties correctly. Plaintiff insists that the allegations of his failure to call in a throat culture were fabricated by defendant, but he has admitted in a sworn deposition that he failed to call in a panic value.  Plaintiff has since submitted an affidavit that he did call in the panic value.  However, while questions of credibility are issues of fact for the jury, plaintiff cannot establish a

material issue of fact merely by contradicting his earlier deposition testimony in an affidavit. <u>Hayes v. New York City Dep't of Corr.</u>, 84 F.3d 614, 619 (2d Cir. 1996) ("a party may not create an issue of fact by submitting an affidavit in opposition to a summary judgment motion that, by omission or addition, contradicts the affiant's previous deposition testimony."); <u>Klein v. Nat'l Life of Vt.</u>, 7 F. Supp. 223, 233 (E.D.N.Y. 1998); <u>Brumer v. Nat'l Life of Vt.</u>, 899 F. Supp. 120, 122-23 (E.D.N.Y. 1995), <u>aff'd</u> 133 F.3d 906 (2d Cir. 1998).

Again, plaintiff has failed to show that the suspension for his failure to perform in his duties was a pretext for age discrimination. He has not argued that younger employees were not disciplined for similar behavior. He concedes that he failed to perform at least one important duty correctly – namely, to call in the "panic" value indicating that immediate action was required. Even if he actually performed the second duty correctly, he has not offered any evidence that the company disciplined him because of age-based animus, rather than simple factual error. The statements attributed to Mr. Paleos and the alleged comments by Ms. Gherradi are not sufficient for plaintiff to meet his burden where he has not pointed to evidence that the nondiscriminatory reason was a pretext for discrimination. <u>See Woroski</u>, 31 F.3d at 110. Therefore, summary judgment is granted

22

as to plaintiff's claims of age discrimination in the suspension.


**(4)**

**Second Transfer**

The next alleged discriminatory action is plaintiff's transfer from Client Services to Microbiology. Plaintiff's qualifications for his position in Client Services are not contested. Though plaintiff's hourly wage did not change in this transfer, he was assigned fewer hours, lowering his pay, which is a materially adverse change. In order to establish the fourth step of the prima facie case, an inference of discriminatory intent, plaintiff reasserts the evidence of the conversations with Mr. Paleos and the comments from Ms. Gherradi, which, again, satisfy the fourth step of providing some evidence of discriminatory intent.

Defendant rebuts plaintiff's prima facie case by arguing that plaintiff was transferred because they determined plaintiff's seniority date. As explained below, the transfer occurred close in time to when plaintiff first filed his discrimination complaints, which may indicate that it occurred in retaliation for plaintiff's protected complaints. However, plaintiff provides no further evidence to buttress his contention that this transfer was age discrimination in the face of CLS's

23

proffered reason: that he was only placed in Client Services until his seniority date was determined. The statements by Mr. Paleos, allegedly made sometime in August 1995 are even farther removed in time from the transfer in May 1996. Without more, defendant is also granted summary judgment as to plaintiff's claim that this transfer was age discrimination.

**(5)**

**Third Transfer**

The final transfer plaintiff alleges as adverse action is his transfer from Microbiology to Accessioning. It is not disputed that he was qualified for the position. Plaintiff succeeds in showing the action was materially adverse because his hourly wage was reduced from about $23.00 per hour to only about $13.00 per hour. See Galabya, 202 F.3d at 640 (stating that a decrease in salary would be considered an adverse action). Plaintiff continues to rely on the earlier comments as evidence for his prima facie case. Additionally, plaintiff argues that the fact that Ms. Li was permitted to stay in the department for longer than him is further evidence of age discrimination.

Assuming these facts establish a prima facie case, defendant offered a nondiscriminatory reason for the transfer: that new technology made his position obsolete. Defendant further claims it kept Ms. Li in the department longer because of her

experience.  Plaintiff does not dispute that the position no longer existed, but claims that he should have been the last technician to be transferred under the union rules.

Again, plaintiff does not point to evidence that the alleged misapplication of the union rules occurred due to his age.  It is uncontested that Ms. Li was, in fact, older than he was.  While this fact would not preclude a finding of discrimination in the face of evidence of discriminatory intent toward plaintiff, O'Connor v. Consolidated Coin Caterers Corp., 517 U.S. 308, 312 (1996), the fact that he was transferred in favor of an older worker creates absolutely no inference of discrimination.  Again, absent evidence of pretext, the alleged discriminatory comments, which are at this point in time even further removed, are insufficient to overcome the summary judgment motion.  Woroski, 31 F.3d at 110 . Therefore, as to this transfer also summary judgment is properly granted to defendant.

## (6)

### Retaliation Claims

Claims of retaliation under both the ADEA and Title VII follow the same three-step burden shifting framework established by McDonnell Douglas, requiring the establishment of a prima facie case, rebuttal of a nondiscriminatory reason by the

defendant and a final rebuttal by the plaintiff that this reason
was pretext for retaliation.  See Slattery, 248 F.3d at 94 (2d
Cir. 2001).

In order to make out a prima facie case of retaliation, a
plaintiff must show by a preponderance of the evidence:
"[1] participation in a protected activity known to the
defendant; [2] an employment action disadvantaging the plaintiff;
and [3] a causal connection between the protected activity and
the adverse employment action."  Id. (quoting Holt v. KMI-
Continental, Inc., 95 F.3d 123, 130 (2d. Cir. 1996)).  The
standard to establish a prima facie case is de minimis.  Id.

Plaintiff met the requirement of the first prong, first by
allegedly making an informal complaint about age discrimination
to Mr. Paleos sometime before his suspension on April 8, 1996,
and second by filing a formal charge of discrimination under
Title VII[3] on April 24, 1996.  See Sumner v. U.S. Postal Serv.,
899 F.2d 203, 209 (2d Cir. 1990) (holding that filing of formal
charges of discrimination and making internal complaints both
constitute protected activity).  Defendant does not deny that
they received the notice prior to April 30, 1996, the date

---

[3]  Plaintiff did not amend his NYCCHR complaint to include claims
of age discrimination until November 1997, well after the
incidents that are the subject of this complaint.

plaintiff was informed of the second transfer.  Plaintiff, therefore, has satisfied the first prong of a prima facie case of retaliation for the suspension with his complaint to Mr. Paleos, and for the second transfer and the third transfer with both his informal complaint and the formal charge of discrimination.[4]  The remaining elements of each alleged adverse action which occurred after the complaints will be addressed in order.

## (7)

### The Suspension

Turning first to the suspension, plaintiff satisfies the second element of the prima facie case for retaliation in that he suffered an adverse action because he lost two and one half days pay.  <u>Galabya</u>, 202 F.3d at 641.  Plaintiff also alleges that the complaint was close in time to the suspension, raising an inference that they were causally related, considering the <u>de minimus</u> standard for a prima facie case.  <u>See</u> <u>Decintio v. Westchester County Med. Ctr.</u>, 821 F.2d 111, 115 (2d Cir. 1987)

---

[4]  For his retaliation claim, plaintiff realleged every fact previously alleged in his age claims without clarifying which acts occurred after he made his protected complaints.  Clearly plaintiff cannot maintain retaliation claims for incidents prior to his complaints.  Summary judgment is therefore granted for claims based on actions prior to his first alleged protected complaint.

(citing <u>Davis v. State Univ. of New York</u>, 802 F.2d 638, 642 (2d Cir. 1986)).

As stated above in the age analysis, defendant has rebutted plaintiff's prima facie case with a legitimate nondiscriminatory reason: the suspension was based on plaintiff's failure to perform his job duties. As explained above, plaintiff admitted to failing to perform at least one important job duty. Again, he has pointed to no other employees who failed to perform such duties and were not disciplined, nor has he pointed to any other possible evidence of pretext.

After failing to show pretext, plaintiff relies on the temporal proximity of his alleged complaint with his discipline. Despite the lack of comparative evidence, plaintiff does claim a strong temporal connection between his complaints to Mr. Paleos and his subsequent suspension. Taking the facts in the light most favorable to the plaintiff, the close proximity in time is sufficient to rebut defendants proffered nondiscriminatory reason. <u>Jute v. Hamilton Sundstrand Corp.</u>, 420 F.3d 166, 180 (2d. Cir. 2005) (holding that strong temporal evidence alone is sufficient to overcome defendant's nondiscriminatory reason for adverse action). Summary judgment is, therefore, denied as to plaintiff's claim that the suspension was in retaliation for making a complaint of discrimination.

### The Second Transfer

The next action plaintiff alleges was retaliatory is his transfer from Client Services to Microbiology.  In this transfer, plaintiff lost scheduled hours, thereby decreasing his take home pay which "created a 'materially significant disadvantage.'" Galabya, 202 F.3d at 641 (quoting Harlston v. McDonnell Douglas Corp., 37 F.3d 379, 382 (8th Cir. 1994)).  This action occurred only days after plaintiff filed his complaint with NYCCHR, thus satisfying the causal connection between the action and protected activity.  Decintio, 821 F.2d at 115.  Since plaintiff has successfully made out a prima facie case, the burden shifts to defendant to proffer some legitimate and nondiscriminatory reason for the action.

In order to rebut plaintiff's prima facie case, defendant argues that plaintiff's position in Client Services was always temporary, pending a determination of plaintiff's seniority.  The temporary nature of the position may be a legitimate reason for transferring plaintiff out of Client Services, but it does not fully rebut plaintiff's claim that he should have been given full time work.  When plaintiff was transferred to Microbiology, he was assigned to replace the worker with the shortest work schedule, even though plaintiff had seniority over Ms. Li who

worked full time.  This fact was not evidence of age discrimination because Ms. Li is older than plaintiff; however, as she has not filed charges of discrimination, she is an appropriate comparative in the context of retaliation.

Even if defendant had established a nondiscriminatory reason for the transfer, plaintiff has temporal evidence that it was pretext for retaliation in this instance.  After a delay of several months, CLS finally made its determination of plaintiff's seniority date mere days after plaintiff filed his complaint of discrimination.  <u>Jute</u>, 420 F.3d at 180.  Upon determining the date, CLS acted to plaintiff's detriment, sending him to a part-time position, possibly in violation of his union contract. Plaintiff suffered a loss of his previous salary as he was paid by the hour.  A fact finder could conclude that the reason for this transfer and subsequent assignment to part-time work was retaliation rather than an actual determination of plaintiff's seniority date.  <u>Id.</u>  Summary judgment is denied as to plaintiff's claims that the second transfer was in retaliation for making a complaint of discrimination.

**(9)**

### The Third Transfer

The final action plaintiff alleges is retaliatory is plaintiff's transfer from Microbiology to Accessioning.  As

30

explained above, plaintiff concedes he was no longer required in
the Microbiology position due to technological advances, but
argues that, due to seniority, he should have been transferred
last.  This transfer resulted in a significant pay cut from $23
per hour to $13 per hour.  By spending less time the Microbiology
department where he had a higher salary, plaintiff lost
compensation and therefore establishes a materially significant
disadvantage satisfying the second prong of a prima facie case
for retaliation.  See Galabya, 202 F.3d at 641.

In order to satisfy the third prong of a causal connection
between the transfer and his complaint, plaintiff compares
himself to the two less senior employees who were allowed to stay
in Microbiology and who had not engaged in the protected
activity.

In rebuttal, defendant argues that the transfer was
necessary due to technological advances in the Microbiology
Department which made plaintiff's work and all other technicians
work unnecessary.  This is a legitimate, nondiscriminatory reason
for the transfer but fails to adequately address plaintiff's
claim.  Though defendant argues that they took the same action
with all of the technicians in Microbiology, plaintiff was in
fact transferred and forced to take a pay cut almost an entire
month before the other employees in that department.  Plaintiff

and defendant dispute whether plaintiff could have replaced either of these other laboratory technicians. If plaintiff could, in fact fill their positions, the only difference between the employees (other than plaintiff's seniority, which presumably would act in his favor) is the fact that plaintiff filed a claim of discrimination. Therefore, this dispute creates an issue of material fact for the jury. As defendant failed to rebut plaintiff's prima facie case and the presumption of discrimination remains, summary judgment on this issue is denied.

## Conclusion

Defendant's motion for summary judgment is granted for plaintiff's claims that his three transfers and suspension were age discrimination under the ADEA.  Defendant's motion is granted on the claims for retaliation for plaintiff's first transfer which predated any protected activity on the part of the plaintiff.  As to plaintiff's claims that his suspension, second transfer and third transfer were all in retaliation for his complaints of discrimination, summary judgment is denied. Summary judgment is also denied as to plaintiff's claims of harassment, as the issue was not briefed by either party.


Dated:  Brooklyn, New York
        March 27, 2006


                         SO ORDERED:


                         ____/s/_____
                         David G. Trager
                         United States District Judge