```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
 -------------------------------X
 STEVE J. KHAN,

          Plaintiff,                       ORDER

     -against-                             Civil Action No.
                                           CV-03-2411 (DGT)
 HIP CENTRALIZED LABORATORY
 SERVICES, INC.,

          Defendants.

 -------------------------------X
```

Trager, J:

It is assumed that the parties are familiar with the facts of this case, which are discussed in three prior opinions and will therefore be only briefly recounted here. See Khan v. HIP Centralized Lab. Servs., No. 03-cv-2411, 2006 WL 842916 (E.D.N.Y. Mar. 27, 2006) ("Khan I"); Khan v. HIP Centralized Lab. Servs., No. 03-cv-2411, 2007 WL 1011325 (E.D.N.Y. Mar. 30, 2007) ("Khan II"); Khan v. HIP Centralized Lab. Servs., Inc., No. 03-cv-2411, 2008 WL 4283348 (E.D.N.Y. Sept. 17, 2008) ("Khan III"). This case arises out of plaintiff's suit against his employer, HIP Centralized Laboratory Services, Inc. ("CLS"), for alleged violations of the Civil Rights Act of 1964 ("Title VII") and the Age Discrimination in Employment Act ("ADEA"). Khan I and II dismissed several of plaintiff's claims. In April 2008, a trial was held on plaintiff's claims for (1) retaliation in the form of a five day suspension for filing a complaint under Title VII, (2) retaliation related to the

same suspension for filing a complaint under the ADEA,

(3) retaliatory hostile work environment under Title VII

and (4) retaliatory hostile work environment under the ADEA.

The jury returned a verdict for plaintiff his on Title VII retaliation claim. The jury, however, rejected his other claims. On the issue of damages, the jury awarded lost wages of $159.21, compensatory damages for emotional injuries of $200,000 and $11,000 in punitive damages. Khan III found that the punitive damage award was unwarranted as a matter of law and offered plaintiff a choice between accepting a remittitur reducing his compensatory award for emotional damages to $50,000 or a new trial. Plaintiff accepted the remittitur.

Plaintiff's counsel now moves for attorneys fees under 42 U.S.C. § 2000e-5(k), requesting $147,830.00 in attorneys fees and an additional $3,360.86 in costs, for a total of $151,190.86. Defendant does not challenge either plaintiff's hourly rates or argue that plaintiff spent an excessive number of hours on the tasks he performed. Rather, defendant argues that this award is excessive because plaintiff prevailed on only a fraction of the case. Stated more specifically, defendant urges that the requested award be reduced both because the successful claim was unrelated to the other claims and because the overall degree of success was limited. The defendant contends that an award of $20,533.00 plus costs would be appropriate. Plaintiff responds that all the claims

were inextricably linked and that the overall degree of success was substantial. For the reasons stated below, plaintiff's counsel is awarded $50,000.00, inclusive of costs.

42 U.S.C. § 2000e-5(k) provides that, "[i]n any action or proceeding under [Title VII] the court, in its discretion, may allow the prevailing party . . . a reasonable attorney's fee (including expert fees) as part of the costs . . . ."[1] In deciding

---

[1] Though not all of plaintiff's claims were based causes of action that award fees according to the standards laid out in 42 U.S.C. § 2000e-5(k), this is not relevant to the issues at stake here. In addition to his Title VII claims, plaintiff also pressed claims under the ADEA. Fee awards under the ADEA are governed by 29 U.S.C. § 216(b) rather than 42 U.S.C. § 2000e-5(k). See Abrahamson v. Board of Educ. of Wappingers Falls Cent., 374 F.3d 66, 77-78 (2d Cir. 2004). 29 U.S.C. § 216(b) provides that "[t]he court in [an ADEA case] shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action."

The ADEA's fee award provision is therefore similar to Tile VII's in that it awards a "reasonable attorney's fee" but different in that it does not explicitly condition the award on the applicant being a "prevailing party." Compare 42 U.S.C. § 2000e-5(k) with 29 U.S.C. § 216(b). It is not entirely clear whether Title VII's prevailing party requirement also applies to the ADEA. See Abrahamson, 374 F.3d at 78 (2d Cir. 2004) (discussing this question but not deciding it).

However, this difference in statutory language regarding the "prevailing party" issue does not impact the analysis in this case. The question here is what fee is reasonable — there is no dispute that plaintiff is a prevailing party. The question of what fee is reasonable is analyzed under the framework set out by the Supreme Court in Hensley v. Eckerhart, 461 U.S. 424, 433 (1983), for both Title VII and ADEA claims. See Reed v. A.W. Lawrence & Co., Inc., 95 F.3d 1170, 1183 n.16 (2d Cir. 1996) (discussing Title VII claims); Abrahamson, 374 F.3d at 79 (discussing ADEA claims). Moreover, as discussed infra, the central question in this case is whether to reduce plaintiff's fee request on the argument that he was not successful on all portions of the case. At least one district court has considered

3

a fee application such as that in the instant case, a court must first decide whether the party moving for fees is a "prevailing party." Hensley v. Eckerhart, 461 U.S. 424, 433 (1983). If the plaintiff is not a prevailing party, no fees will be awarded. See id. If the plaintiff is a prevailing party, the court must award an amount of fees that is "reasonable." Id.[2]

Plaintiff plainly is a prevailing party. Under Hensley, a plaintiff is a prevailing party if he "succeed[s] on any significant issue in litigation which achieves some of the benefit . . . sought in bringing suit." Id. (quotation omitted). In the instant case, plaintiff succeeded on his claim for retaliation under Title VII and received $50,159.21 in damages. Thus he achieved some of the benefit he sought in bringing suit. Indeed, defendant concedes that plaintiff is a prevailing party.

It remains, therefore, to determine what fee is reasonable. "The process of determining a reasonable fee ordinarily begins with

---

Title VII and ADEA claims together for purposes of making this decision. See Vernon v. Port Authority of New York and New Jersey, 220 F.Supp.2d 223 (S.D.N.Y. 2002).

[2] Hensley analyzed an application for attorneys fees under 42 U.S.C. § 1988 rather than the statute at issue here. See Hensley 461 U.S. at 426. However, Hensley's analysis also applies to fee awards in Title VII and ADEA cases. See Reed v. A.W. Lawrence & Co., Inc., 95 F.3d 1170, 1183 n.16 (2d Cir. 1996) (considering a Title VII case); Abrahamson v. Board of Educ. of Wappingers Falls Cent., 374 F.3d 66, 79 (2d Cir. 2004) (applying Hensley's framework to decide what constituted a reasonable fee in an ADEA case).

the court's calculation of a so-called 'lodestar' figure, which is arrived at by multiplying 'the number of hours reasonably expended on the litigation ... by a reasonable hourly rate.'" LeBlanc-Sternberg v. Fletcher, 143 F.3d 748, 763 (2d Cir. 1998) (quoting Hensley, 461 U.S. at 433). This number can be adjusted up or down based on other factors. In particular, a downward adjustment may be appropriate when "succeeded on only some of his claims for relief." Hensley, 461 U.S. at 434.[3]

There are two primary ways in which the attorneys fee award may be reduced based on limited success. First, the fees should be adjusted downward where "counsel's work on [unsuccessful] claim[s is] unrelated" to work on the successful claims." Id. at 435. In such cases, the fee should be lowered to ensure that "no fee [is] awarded for services on the unsuccessful claim[s]." Id. Second, to the extent that counsel's work cannot be neatly divided between

---

[3]Losing on some claims does not automatically lead to a fee reduction. As the court wrote in Hensley:

> Where a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee. Normally this will encompass all hours reasonably expended on the litigation, and indeed in some cases of exceptional success an enhanced award may be justified. In these circumstances the fee award should not be reduced simply because the plaintiff failed to prevail on every contention raised in the lawsuit.

Hensley, 461 U.S. at 435.

5

claims, the fee may reduced based on the "degree of success obtained." Hensley, 461 U.S. at 436. "When an adjustment is requested on the basis of either the exceptional or limited nature of the relief obtained by the plaintiff, the district court should make clear that it has considered the relationship between the amount of the fee awarded and the results obtained." Id. at 437.

As an initial matter, the plaintiff's requested fee of $147,830.00 plus costs will be accepted as the lodestar. The defense has not challenged either plaintiff's efficiency or his rates or suggested that inappropriate specific items are included in the lodestar. The Court's own review also discloses no reason to reject the plaintiff's request as a lodestar.

It therefore remains to determine whether there are any reasons to deviate from the lodestar in determining plaintiff's fee. The "party advocating the reduction of the lodestar amount bears the burden of establishing that a reduction is justified." United States Football League v. National Football League, 887 F.2d 408, 413 (2d Cir. 1989). As discussed earlier, the defense argues that the fee should be reduced because the claim on which plaintiff succeeded was unrelated to the other claims and that the unrelated claims should therefore be divided out for purposes of determining the award. The Court in Hensley noted that a case should not be divided by claim for purposes of a fee award where the "claims for relief. . . involve a common core of facts or

[are] based on related legal theories." Hensley, 461 U.S. at 435. A case should not be subdivided when "[m]uch of counsel's time [is] devoted generally to the litigation as a whole, making it difficult to divide the hours expended on a claim-by-claim basis." Id.

In the instant case, it is not possible to divide the case on a claim by claim basis because the claims were too closely related. As noted above, plaintiff prevailed on his Title VII retaliation claim relating to a five-day suspension. This same suspension was at issue for his ADEA retaliation claim, indicating that these two claims involve a common core of facts. Moreover, many of plaintiff's billing entries were related to the case as a whole, such as his interviews with his client and settlement negotiations with defense counsel.

There was also factual overlap between the successful claim and the other claims raised in the suit. All of plaintiff's claims arose out of his troubled employment relationship with CIS, about which plaintiff made a long list of allegations that reflected a pattern of purportedly discriminatory conduct. See Bruno v. Western Elec. Co., 618 F.Supp. 398, 403 (D. Colo. 1985) (finding an unsuccessful claim interrelated under Hensley when it was part of a series of allegedly discriminatory actions). Even if plaintiff were asserting only his retaliation claims, some investigation into his general employment history with CIS would have been necessary to provide background and context. Moreover, some of the witnesses

7

at trial gave testimony relevant to both plaintiff's successful and his unsuccessful claims. Finally, the claims were tied together in that they could all have potentially contributed to the emotional problems from which plaintiff suffered — problems for which he ultimately recovered substantial damages based on his successful claim.

Of course, some of the billing entries that were of general relevance could theoretically be divided by claim, but on the facts presented here this kind of division is not practical. For instance, plaintiff might have done less investigation into other parts of his employment relationship with CIS had he been pressing only his Title VII retaliation claim. However, there does not appear to be any satisfactory way to decide how much less investigation would have been done.[4] Ironically, perhaps the easiest set of entries to attribute to a specific claim is that relating to plaintiff's work on the remittiur issue. These hours are, of course, directly tied to the successful claim.

---

[4]Arguably, this is partly a function of the fact that plaintiff's billing records are often not precise regarding what claim he was working on at what time. Though the district court has the discretion to reduce or even completely deny a fee award when a plaintiff's records are inadequate, see <u>Terminate Control Corp. v. Horowitz</u>, 28 F.3d 1335, 1342-43 (2d Cir. 1994), no reduction on this ground is necessary here. While separating billing entries by claim is definitely the preferred practice, such separation would often have been difficult in this case given its fact-intensive nature. Moreover, as evidenced by the discussion below, any arguable lack of precision in the billing records has not made it impossible to determine a fair fee award.

In short, there does not appear to be any workable way to divide the hours plaintiff spent on this case because the claims were too related to each other. Indeed, the defense does not even attempt to comprehensively account for the specific hours that were not relevant to the successful claim.[5] Therefore the lodestar should not be adjusted on the rationale that the claims were "unrelated."

However, plaintiff's overall degree of success is sufficiently

---

[5]The defense lists a small number of line items that it argues were not related to the claims on which the plaintiff was successful. These allegedly unnecessary line items collectively total $5,632.50 and arise out of plaintiff's depositions of Sudhir Butala, Sharon Greenberg and Michael Paleos. The defense, however, has not met its burden to show that these charges derive from unrelated claims. Even focusing on plaintiff's successful claim, it was reasonable for him to depose Sudhir Butala and Sharon Greenberg. According to plaintiff, these witnesses were designated by the defense in response to a request by the plaintiff for witnesses generally having knowledge of all of the allegedly adverse actions at issue, one of which was the Title VII retaliation claim on which plaintiff succeeded. There is no reason to doubt plaintiff's representation. Moreover, Greenberg was Director of Human Resources and Butala was head of Microbiology. Given their positions, both Greenberg and Butala could plausibly have had knowledge of general relevance to the case. Indeed, at trial, Butala gave testimony directly related to plaintiff's successful Title VII retaliation claim.

Defendant claims that charges arising from the deposition of Michael Paleos are unrelated to the successful claim because plaintiff only alleged that Paleos discriminated against him on the basis of age and not any category relevant to Title VII. Plaintiff, however, claimed that Paleos was involved in his five-day suspension — the same one that was at issue in the successful Title VII claim. Thus, Paleos's testimony bore on a claim that was tightly related to the successful claim. Accordingly, the defense has not met its burden to show that these charges should be disallowed.

low that a fee reduction is warranted.[6]  In determining the degree of the reduction, the analysis centers "on the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation." Hensley, 461 U.S. at 435. In the instant case, the successful claim was one of four presented to the jury.  Moreover, other claims were dismissed prior to trial. Of course, the plaintiff's level of success cannot be determined by the application of a mechanical ratio. See Hensley, 461 U.S. at 435 n.11.  To get a better sense of how successful plaintiff was, it is worth examining the relative importance of plaintiff's claims.  The Title VII retaliation claim was not plaintiff's most important cause of action.  Indeed, his two hostile work environment claims related to conduct that was arguably more serious and, more importantly, had the potential of generating more significant relief in the form of roughly $61,000 in lost wages and up to a total of $300,000 in compensatory damages.[7]

Having said that, plaintiff did achieve substantial relief. Even after accepting remittitur, plaintiff was awarded $50,159.91 in total damages.  The work required to advance this claim, though difficult to measure precisely, was undoubtedly substantial.  See

---

[6]To be sure, in some cases, the degree of success is sufficiently high that a plaintiff should be awarded fully compensatory fees even though he did not prevail on all of his claims.  Hensley, 461 U.S. at 435.  However, for the reasons discussed here, this was plainly not such a case.

[7]A Title VII claimant working for a company that is the size of CLS can receive up to $300,000 in compensatory damages.  See 42 U.S.C. § 1981a(b)(3)(D).

10

Rivera v. Dyett, 762 F.Supp. 1109, 1117 (S.D.N.Y. 1991) (considering the amount of time it would have taken to press the successful claim in deciding how much to reduce the fee for limited success). This significant — but incomplete — level of success has to be considered in combination with plaintiff's attorney's fee and costs claim for $151,190.86. Weighing the pertinent factors, plaintiff is entitled to an award of $50,000, inclusive of costs. This award represents a reduction of roughly of 2/3 to the lodestar and accurately balances the relevant considerations.

Dated:    Brooklyn, New York
           July 29, 2009

SO ORDERED:

_____/s/_____
David G. Trager
United States District Judge